# Exhibit 1

 **CT Corporation**

**Service of Process Transmittal**
06/09/2017
CT Log Number 531370191

**TO:** Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:** **Process Served in Delaware**

**FOR:** Endo Health Solutions Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CLAUDIA GAXIOLA, et al., Pltfs. vs. American Medical Systems, Inc., et al., Dfts. // To: Endo Health Solutions Inc. |
| **DOCUMENT(S) SERVED:** | Amended Complaint |
| **COURT/AGENCY:** | San Diego County - Superior Court - San Diego, CA Case # 37201700001718CUPLCTL |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - The Monarc Sling |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/09/2017 at 11:18 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Jennifer Liakos NAPOLI SHKOLNIK & ASSOCIATES LLP 525 South Douglas Street #260 El Segundo, CA 90245 310-331-8224 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/09/2017, Expected Purge Date: 06/14/2017 |
| | Image SOP |
| | Email Notification,  Jobina Jones-McDonnell  jones.jobina@endo.com |
| | Email Notification,  Helen Howlett  howlett.helen@endo.com |
| | Email Notification,  Marian Gustafson  marian.gustafson@parpharm.com |
| | Email Notification,  Carolyn Hazard  hazard.carrie@endo.com |
| | Email Notification,  Par Notice Dept  Par.noticeDept@parpharm.com |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 N Orange St Wilmington, DE 19801-1120 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
06/09/2017
CT Log Number 531374547

TO: Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

RE: **Process Served in Delaware**

FOR: Astora Women's Health, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CLAUDIA GAXIOLA, et al., Pltfs. vs. American Medical Systems, Inc., et al., Dfts. // To: Astora Women's Health LLC *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Amended Complaint |
| **COURT/AGENCY:** | San Diego County - Superior Court - San Diego, CA Case # 37201700001718CUPLCTL |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Monarc Sling |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/09/2017 at 11:00 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Jennifer Liakos NAPOLI SHKOLNIK & ASSOCIATES LLP 525 South Douglas Street #260 El Segundo, CA 90245 (310) 331-4224 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/09/2017, Expected Purge Date: 06/14/2017 |
| | Image SOP |
| | Email Notification,  Jobina Jones-McDonnell  jones.jobina@endo.com |
| | Email Notification,  Helen Howlett  howlett.helen@endo.com |
| | Email Notification,  Marian Gustafson  marian.gustafson@parpharm.com |
| | Email Notification,  Carolyn Hazard  hazard.carrie@endo.com |
| | Email Notification,  Par Notice Dept  Par.noticeDept@parpharm.com |
| **SIGNED:** **ADDRESS:** | The Corporation Trust Company 1209 N Orange St Wilmington, DE 19801-1120 |

Page 1 of  2 / DB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
06/09/2017
CT Log Number 531374547

**TO:**    Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:**    **Process Served in Delaware**

**FOR:**    Astora Women's Health, LLC  (Domestic State: DE)

**TELEPHONE:**                302-658-7581

Page 2 of  2 / DB

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
06/09/2017
CT Log Number 531371203

| | |
|---|---|
| **TO:** | Carol Purcell<br>Endo Pharmaceuticals Inc.<br>1400 Atwater Dr<br>Malvern, PA 19355-8701 |
| **RE:** | **Process Served in Delaware** |
| **FOR:** | Astora Women's Health Holdings, LLC  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CLAUDIA GAXIOLA, et al., Pltfs. vs. American Medical Systems, Inc., et al., Dfts. // To: Astora Women's Health Holdings, LLC |
| **DOCUMENT(S) SERVED:** | Amended Complaint |
| **COURT/AGENCY:** | San Diego County - Superior Court - San Diego, CA<br>Case # 37201700001718CUPLCTL |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - AMS Monarc Subfascial Hammock Sling |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/09/2017 at 11:00 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Jennifer Liakos<br>NAPOLI SHKOLNIK & ASSOCIATES LLP<br>525 South Douglas Street #260<br>El Segundo, CA 90245<br>(310) 331-8224 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/09/2017, Expected Purge Date: 06/14/2017<br><br>Image SOP<br><br>Email Notification,  Helen Howlett  howlett.helen@endo.com<br><br>Email Notification,  Jobina Jones-McDonnell  jones.jobina@endo.com<br><br>Email Notification,  Marian Gustafson  marian.gustafson@parpharm.com<br><br>Email Notification,  Carolyn Hazard  hazard.carrie@endo.com<br><br>Email Notification,  Par Notice Dept  Par.noticeDept@parpharm.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Trust Company<br>1209 N Orange St<br>Wilmington, DE 19801-1120 |

Page 1 of  2 / MK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
06/09/2017
CT Log Number 531371203

**TO:**     Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:**     **Process Served in Delaware**

**FOR:**    Astora Women's Health Holdings, LLC  (Domestic State: DE)

**TELEPHONE:**              302-658-7581

Page 2 of  2 / MK

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

 **CT Corporation**

**Service of Process Transmittal**
06/09/2017
CT Log Number 531370149

**TO:**   Carol Purcell
Endo Pharmaceuticals Inc.
1400 Atwater Dr
Malvern, PA 19355-8701

**RE:**   **Process Served in Delaware**

**FOR:**   Endo Pharmaceuticals Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CLAUDIA GAXIOLA, et al., Pltfs. vs. American Medical Systems, Inc., et al., Dfts. // To: Endo Pharmaceuticals Inc. |
| **DOCUMENT(S) SERVED:** | Judgment |
| **COURT/AGENCY:** | San Diego County - Superior Court - San Diego, CA Case # 37201700001718CUPLCTL |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - The Monarc Sling |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/09/2017 at 11:00 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Jennifer Liakos NAPOLI SHKOLNIK & ASSOCIATES LLP 525 South Douglas Street #260 El Segundo, CA 90245 310-331-8224 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/09/2017, Expected Purge Date: 06/14/2017 |
| | Image SOP |
| | Email Notification, Jobina Jones-McDonnell  jones.jobina@endo.com |
| | Email Notification, Helen Howlett  howlett.helen@endo.com |
| | Email Notification, Marian Gustafson  marian.gustafson@parpharm.com |
| | Email Notification, Carolyn Hazard  hazard.carrie@endo.com |
| | Email Notification, Par Notice Dept  Par.noticeDept@parpharm.com |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 N Orange St Wilmington, DE 19801-1120 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / SB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exh 1 - Page 9



Jennifer Liakos (CA SBN 207487)
NAPOLI SHKOLNIK & ASSOCIATES LLP
525 South Douglas Street #260
El Segundo, CA 90245
Telephone: (310) 331-8224
jliakos@napolilaw.com

Attorneys for Plaintiffs

FILED
CIVIL BUSINESS OFFICE 10
CENTRAL DIVISION

2017 MAY -2  P 3 28

CLERK - SUPERIOR COURT
SAN DIEGO ONLY 12.00

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| CLAUDIA GAXIOLA; VELORA ABEL; THERESA ALLEN-COHEN; SHARON AMANN; TRACI ANDERRSON; DORA BAILEY; CARMEN BAIN; DEBORAH BATTLES; ELEANOR BAYSINGER; AMANDA BEAULIEU; KATHY BEE; MECYLAH BENNETT; VIRGINIA BILLUPS; PAMELA BIRD; VANESSA BIRRELL; KEENA BLYTHE; UNIRY BREA; SARAH BROWN; MARIN BROWN; WENDY BUNNELL; JESSICA BURKS; ROSEMARY BURKS; SANDRA BURROUGHS; CARROL CALLEBS; GINNY CALLOWAY; DENISE CARPENTER; KIM CARTER; JEANNETTE CAWLEY; ELLEN CHILDERS; DONNA COTHRAN CHRISTY; DIANE CITINO; PRINCESS COLEMAN; KELLIE COLSON; CYNTHIA CONLEY; JACQUELYNE CONNOLLY; LEILANI DAVIS; CONSUELO DEALVAREZ; BRENDA ERKENBRACK; ROXANNE ESCOBEDO; JOANNA FERNANDEZ; SHANA FLEMING; KELLY FORD; SHARON FRONGELLO; ARIKA FUELL; AMALIA FUENTEZ; MARIBEL GARCIA; LINDA GARCIA; SHELVA GAUDETTE; MARY GAYLORD; LOUISE GIORDANO; JANET GLAWE; RONDA GRIFFITH; DAWN GUY; LEANN HAGEN; JEAN HALL; ANGELA HAMAR; SANDRA HANKINS; NORMA HARGARTHER; JEAN HART; DAPHYNE HAWES; | Case No. 37-2017-00001718-CU-PL-CTL<br><br>**AMENDED COMPLAINT FOR DAMAGES**<br>**JURY TRIAL DEMAND**<br><br>1.  Strict Liability – Failure to Warn<br>2.  Strict Liability – Manufacturing Defect<br>3.  Strict Liability – Design Defect<br>4.  Negligence<br>5.  Breach of Implied Warranty<br>6.  Breach of Express Warranty<br>7.  Deceit by Concealment – Ca. Civ. Code §§ 1709, 1710<br>8.  Negligent Misrepresentation<br>9.  Fraud by Concealment<br>10. Violation of Cal. Bus. & Prof. Code § 17200<br>11. Violation of Cal. Bus. & Prof. Code § 17500<br>12. Violation of Cal. Civ. Code § 1750 |

| | |
|---|---|
| 1 | LINDA HAYWOOD; SHARON |
| 2 | HENRYS; JUDITH HIGGINS; KRISTY HOWARD; PATSY HUDSON; SUSAN |
| 3 | HUEBNER; BOBBIE HUBERT; PATRICIA JACKSON; BRENDA |
| 4 | JOHNSON ;i RHONDA JOHNSON; MARY JOHNSON; NORMA KIESER; |
| 5 | LEQUITA LANDERS; JOSEPHINE LEBEAU; CAROLE LITTLE; CAROL |
| 6 | LOSTUMBO; JUDITH LUNA; JOHANNA LYONS; JOAN MAHNKEN; |
| 7 | MARGIE MARTINEZ; MARTHA IRENE MARTINEZ; KARREN MAXWELL; |
| 8 | PATRICIA MAXWELL-JACKSON; |
| 9 | TAMMY MCCOLLUM; TONI MCGEE; SANDRA KAY MELTON; THERESA |
| 10 | MENDEZ; DARLA MEYER; BETH MILLER; TABITHA MIRANDA; |
| 11 | CHRISTINA MORENO-CONNER; SUSIE MORGAN; SANDRA |
| 12 | MOULTON; MILLIE MUNOZ; LETICIA |
| 13 | MURGUIA; PAMELA MURRAY; CELESTINE NOUIS; SUSAN OCHS; |
| 14 | JULIE OTT; CLAIRE PADO; ALICIA PASKEL; GWEN PATE; JILL PELTZIE; |
| 15 | ROSMARY PENCE; MICHELLE |
| 16 | PERTEET; SHIRLEY PRICE; JOANNE PUTNAM; KIM REAGLE; JANET |
| 17 | RECLA; JOYCE ROLLER; ANGEL RUSSELL; EVA SARTAIN; HEATHER |
| 18 | SCHOENBERGER; LEILA SCHROEER; |
| 19 | STEPHANIE SCOTT; CYNTHIA WEST SELLERS; JOANNE SELOGY; MARIA |
| 20 | SILVA; MARTHA SPEED; LINDA STEELE; CECIL ALLISON STEPHENS; |
| 21 | KELLY STEVENS; DAWN STONE; |
| 22 | JENNIFER THOMAS; HELEN THOMAS; RANDIE TINGEY; DIANA |
| 23 | TROLL; DORILE TROSCLAIR; JEAN TRYKOWSKI; CHARLOTTE TUCKER; |
| 24 | CHERYL WALTON; CATHERINE WARD; BRENDA WARREN; NANCY |
| 25 | WHEELER; ALYSIA WIDENER; LINDA WILEY; MAXINE WILGUS; JOYCE |
| 26 | WILLIAMS; DEBRA WILLIS; |
| 27 | KIMBERLY WITHROW; JUDITH WOODS; FRANCES WOULLARD; |
| 28 | JACQUELINE-SUE WRIGHT; SHERRY |

CIVIL COMPLAINT FOR DAMAGES

2

1  WYSONG; KAREN YOUNG;
2  LYNNETTE YOUNG; JULIE ZINVELI.

3              Plaintiffs,

4       vs.

5  American Medical Systems, Inc.; American
6  Medical Systems, LLC; Astora Women's
   Health LLC; Astora Women's Health
7  Holdings, LLC; Astora Women's Health,
8  Inc.; American Medical Systems Holdings,
   Inc.; Astora Holdings, LLC; Endo
9  Pharmaceuticals Inc.; Endo Health
   Solutions Inc.; BOSTON SCIENTIFIC
10 CORPORATION (d/b/a Mansfield
   Scientific, Inc. & Microvastive, Inc); DOE
11 MANUFACTURERS one through one
12 hundred.

13             Defendants.

14      COME NOW Plaintiffs, and each of them, complain and allege against Defendants, Does 1

15 through 100, and each of them as follows:

16                      GENERAL ALLEGATIONS

17      1.      This action involves the claims of personal injury, economic damages, punitive damages,

18 and other claims of damage arising from the implantation of Pelvic Mesh Medical Devices that were

19 developed, manufactured, supplied, designed, labeled, packaged, distributed, marketed, advertised,

20 licensed and sold by Defendants.

21      2.      At all relevant times, Defendants developed technology to diagnose and treat conditions

22 related to the pelvic health of women.  At all times relevant herein, Defendants were engaged in the

23 business of placing synthetic mesh system medical devices into the stream of commerce by designing,

24 manufacturing, marketing, packaging, advertising, promoting, distributing, labeling, and selling such

25 devices, including, but not limited to, the Apogee, Perigee, MiniArc Sling, Monarc Subfascial

26 Hammock, SPARC, In-Fast, Elevate, Straight In.

27      3.      At all times herein mentioned, each of the Defendants acted as the agent, servant, partner,

28 aider and abettor, co-conspirator and joint venture of each of the remaining Defendants herein and were

at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty.

4.    There exists, and at all times herein mentioned there existed, a unity of interest in ownership between certain Defendants and other Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendant, and exerted control over those Defendants.  Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promise injustice.

5.    The injuries and damages to Plaintiffs were caused by the wrongful acts, omissions, and fraudulent representations of Defendants, many of which occurred within the State of California.

6.    At all times herein mentioned Defendants were each authorized to do business within the State of California and did in fact supply the aforementioned products within the State of California.

7.    At all times herein mentioned, the officers and directors of Defendants authorized and directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct which resulted in the physical injuries described herein.

## JURISDICTION AND VENUE

8.    Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants hereto are individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction and that said Defendants have and do regularly conduct business in the County of San Diego, State of California.

9.    Venue is proper in this county because Plaintiff Claudia Gaxiola is a resident of County

of San Diego, State of California.

PLAINTIFFS

10.    Plaintiff CLAUDIA GAXIOLA is a natural person residing in the State of California. Plaintiff CLAUDIA GAXIOLA was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 13, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CLAUDIA GAXIOLA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

11.    Plaintiff VELORA ABEL is a natural person residing in the State of Texas. Plaintiff VELORA ABEL was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 27, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff VELORA ABEL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

12.    Plaintiff THERESA ALLEN-COHEN is a natural person residing in the State of Michigan. Plaintiff THERESA ALLEN-COHEN was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 2, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff THERESA ALLEN-COHEN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

13.    Plaintiff SHARON AMANN is a natural person residing in the State of Indiana. Plaintiff SHARON AMANN was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 12, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by

CIVIL COMPLAINT FOR DAMAGES
5

Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHARON AMANN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

14.     Plaintiff TRACI ANDERRSON is a natural person residing in the State of Indiana. Plaintiff TRACI ANDERRSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 9, 2010.   The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff TRACI ANDERRSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

15.     Plaintiff DORA BAILEY is a natural person residing in the State of Massachusetts. Plaintiff DORA BAILEY was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 17, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DORA BAILEY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

16.     Plaintiff CARMEN BAIN is a natural person residing in the State of Oklahoma. Plaintiff CARMEN BAIN was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 25, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CARMEN BAIN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

17.     Plaintiff DEBORAH BATTLES is a natural person residing in the State of Alabama. Plaintiff DEBORAH BATTLES was implanted with an AMS Monarc Subfascial Hammock Sling on

or about March 6, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DEBORAH BATTLES began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

18.     Plaintiff ELEANOR BAYSINGER is a natural person residing in the State of Michigan. Plaintiff ELEANOR BAYSINGER was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 28, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ELEANOR BAYSINGER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

19.     Plaintiff AMANDA BEAULIEU is a natural person residing in the State of Vermont. Plaintiff AMANDA BEAULIEU was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 3, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff AMANDA BEAULIEU began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

20.     Plaintiff KATHY BEE is a natural person residing in the State of Indiana. Plaintiff KATHY BEE was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 18, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KATHY BEE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

21.    Plaintiff MECYLAH BENNETT is a natural person residing in the State of New York. Plaintiff MECYLAH BENNETT was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 24, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MECYLAH BENNETT began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

22.    Plaintiff VIRGINIA BILLUPS is a natural person residing in the State of Michigan. Plaintiff VIRGINIA BILLUPS was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 25, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff VIRGINIA BILLUPS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

23.    Plaintiff PAMELA BIRD is a natural person residing in the State of Michigan. Plaintiff PAMELA BIRD was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 29, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PAMELA BIRD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

24.    Plaintiff VANESSA BIRRELL is a natural person residing in the State of Georgia. Plaintiff VANESSA BIRRELL was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 17, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff VANESSA BIRRELL began to

experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

25.    Plaintiff KEENA BLYTHE is a natural person residing in the State of Michigan. Plaintiff KEENA BLYTHE was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 1, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KEENA BLYTHE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

26.    Plaintiff UNIRY BREA is a natural person residing in the State of Massachusetts. Plaintiff UNIRY BREA was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 7, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff UNIRY BREA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

27.    Plaintiff SARAH BROWN is a natural person residing in the State of Georgia. Plaintiff SARAH BROWN was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 30, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SARAH BROWN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

28.    Plaintiff MARIN BROWN is a natural person residing in the State of California. Plaintiff MARIN BROWN was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 16, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

CIVIL COMPLAINT FOR DAMAGES
9

AMS Monarc Sling was implanted Plaintiff MARIN BROWN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

29.    Plaintiff WENDY BUNNELL is a natural person residing in the State of Illinois. Plaintiff WENDY BUNNELL was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 12, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff WENDY BUNNELL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

30.    Plaintiff JESSICA BURKS is a natural person residing in the State of California. Plaintiff JESSICA BURKS was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 26, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JESSICA BURKS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

31.    Plaintiff ROSEMARY BURKS is a natural person residing in the State of Ohio. Plaintiff ROSEMARY BURKS was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 11, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ROSEMARY BURKS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

32.    Plaintiff SANDRA BURROUGHS is a natural person residing in the State of Illinois. Plaintiff SANDRA BURROUGHS was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 29, 2010.   The Monarc Sling was manufactured, marketed, advertised and

promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SANDRA BURROUGHS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

33.    Plaintiff CARROL CALLEBS is a natural person residing in the State of Kentucky. Plaintiff CARROL CALLEBS was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 20, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CARROL CALLEBS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

34.    Plaintiff GINNY CALLOWAY is a natural person residing in the State of Maryland. Plaintiff GINNY CALLOWAY was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 23, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff GINNY CALLOWAY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

35.    Plaintiff DENISE CARPENTER is a natural person residing in the State of Tennessee. Plaintiff DENISE CARPENTER was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 15, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DENISE CARPENTER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

36.    Plaintiff KIM CARTER is a natural person residing in the State of Alabama. Plaintiff KIM CARTER was implanted with an AMS Monarc Subfascial Hammock Sling on or about

December 1, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KIM CARTER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

37.    Plaintiff JEANNETTE CAWLEY is a natural person residing in the State of Michigan. Plaintiff JEANNETTE CAWLEY was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 5, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JEANNETTE CAWLEY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

38.    Plaintiff ELLEN CHILDERS is a natural person residing in the State of Georgia. Plaintiff ELLEN CHILDERS was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 24, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ELLEN CHILDERS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

39.    Plaintiff DONNA COTHRAN CHRISTY is a natural person residing in the State of Texas. Plaintiff DONNA COTHRAN CHRISTY was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 17, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DONNA COTHRAN CHRISTY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

40.     Plaintiff DIANE CITINO is a natural person residing in the State of Ohio. Plaintiff DIANE CITINO was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 7, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DIANE CITINO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

41.     Plaintiff PRINCESS COLEMAN is a natural person residing in the State of Texas. Plaintiff PRINCESS COLEMAN was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 24, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PRINCESS COLEMAN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

42.     Plaintiff KELLIE COLSON is a natural person residing in the State of New York. Plaintiff KELLIE COLSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 27, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KELLIE COLSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

43.     Plaintiff CYNTHIA CONLEY is a natural person residing in the State of Illinois. Plaintiff CYNTHIA CONLEY was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 15, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CYNTHIA CONLEY began to

experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

44.    Plaintiff JACQUELYNE CONNOLLY is a natural person residing in the State of Connecticut. Plaintiff JACQUELYNE CONNOLLY was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 9, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JACQUELYNE CONNOLLY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

45.    Plaintiff LEILANI DAVIS is a natural person residing in the State of Texas. Plaintiff LEILANI DAVIS was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 9, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LEILANI DAVIS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

46.    Plaintiff CONSUELO DEALVAREZ is a natural person residing in the State of California. Plaintiff CONSUELO DEALVAREZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 30, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CONSUELO DEALVAREZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

47.    Plaintiff BRENDA ERKENBRACK is a natural person residing in the State of Tennessee. Plaintiff BRENDA ERKENBRACK was implanted with an AMS Monarc Subfascial

Hammock Sling on or about February 25, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff BRENDA ERKENBRACK began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

48.    Plaintiff ROXANNE ESCOBEDO is a natural person residing in the State of California. Plaintiff ROXANNE ESCOBEDO was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 5, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ROXANNE ESCOBEDO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

49.    Plaintiff JOANNA FERNANDEZ is a natural person residing in the State of Texas. Plaintiff JOANNA FERNANDEZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 3, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOANNA FERNANDEZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

50.    Plaintiff SHANA FLEMING is a natural person residing in the State of Texas. Plaintiff SHANA FLEMING was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 13, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHANA FLEMING began to experience severe

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

51.    Plaintiff KELLY FORD is a natural person residing in the State of Kentucky. Plaintiff KELLY FORD was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 26, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KELLY FORD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

52.    Plaintiff SHARON FRONGELLO is a natural person residing in the State of Florida. Plaintiff SHARON FRONGELLO was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 17, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHARON FRONGELLO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

53.    Plaintiff ARIKA FUELL is a natural person residing in the State of Arizona. Plaintiff ARIKA FUELL was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 28, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ARIKA FUELL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

54.    Plaintiff AMALIA FUENTEZ is a natural person residing in the State of California. Plaintiff AMALIA FUENTEZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 26, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

Exh 1 - Page 25

AMS Monarc Sling was implanted Plaintiff AMALIA FUENTEZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

55.    Plaintiff MARIBEL GARCIA is a natural person residing in the State of Massachusetts. Plaintiff MARIBEL GARCIA was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 24, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARIBEL GARCIA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

56.    Plaintiff LINDA GARCIA is a natural person residing in the State of New Mexico. Plaintiff LINDA GARCIA was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 4, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LINDA GARCIA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

57.    Plaintiff SHELVA GAUDETTE is a natural person residing in the State of Idaho. Plaintiff SHELVA GAUDETTE was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 16, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHELVA GAUDETTE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

58.    Plaintiff MARY GAYLORD is a natural person residing in the State of Massachusetts. Plaintiff MARY GAYLORD was implanted with an AMS Monarc Subfascial Hammock Sling on or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

about January 1, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARY GAYLORD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

59.     Plaintiff LOUISE GIORDANO is a natural person residing in the State of South Carolina. Plaintiff LOUISE GIORDANO was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 16, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LOUISE GIORDANO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

60.     Plaintiff JANET GLAWE is a natural person residing in the State of Illinois. Plaintiff JANET GLAWE was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 27 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JANET GLAWE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

61.     Plaintiff RONDA GRIFFITH is a natural person residing in the State of Colorado. Plaintiff RONDA GRIFFITH was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 24, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff RONDA GRIFFITH began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

62.    Plaintiff DAWN GUY is a natural person residing in the State of South Carolina. Plaintiff DAWN GUY was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 13, 2009.   The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DAWN GUY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

63.    Plaintiff LEANN HAGEN is a natural person residing in the State of Wisconsin. Plaintiff LEANN HAGEN was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 25, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LEANN HAGEN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

64.    Plaintiff JEAN HALL is a natural person residing in the State of Iowa. Plaintiff JEAN HALL was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 10, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JEAN HALL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

65.    Plaintiff ANGELA HAMAR is a natural person residing in the State of Montana. Plaintiff ANGELA HAMAR was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 30, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ANGELA HAMAR began to experience severe

complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

66. Plaintiff SANDRA HANKINS is a natural person residing in the State of California. Plaintiff SANDRA HANKINS was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 3, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SANDRA HANKINS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

67. Plaintiff NORMA HARGARTHER is a natural person residing in the State of Michigan. Plaintiff NORMA HARGARTHER was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 15, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff NORMA HARGARTHER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

68. Plaintiff JEAN HART is a natural person residing in the State of New York. Plaintiff JEAN HART was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 29, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JEAN HART began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

69. Plaintiff DAPHYNE HAWES is a natural person residing in the State of North Carolina. Plaintiff DAPHYNE HAWES was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 18, 2009. The Monarc Sling was manufactured, marketed, advertised and

promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DAPHYNE HAWES began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

70.    Plaintiff LINDA HAYWOOD is a natural person residing in the State of North Carolina. Plaintiff LINDA HAYWOOD was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 13, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LINDA HAYWOOD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

71.    Plaintiff SHARON HENRYS is a natural person residing in the State of Michigan. Plaintiff SHARON HENRYS was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 18, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHARON HENRYS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

72.    Plaintiff JUDITH HIGGINS is a natural person residing in the State of Wisconsin. Plaintiff JUDITH HIGGINS was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 30, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JUDITH HIGGINS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

73.    Plaintiff KRISTY HOWARD is a natural person residing in the State of Michigan. Plaintiff KRISTY HOWARD was implanted with an AMS Monarc Subfascial Hammock Sling on or

about December 14, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KRISTY HOWARD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

74.     Plaintiff PATSY HUDSON is a natural person residing in the State of Texas. Plaintiff PATSY HUDSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 16, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PATSY HUDSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

75.     Plaintiff SUSAN HUEBNER is a natural person residing in the State of Iowa. Plaintiff SUSAN HUEBNER was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 14, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SUSAN HUEBNER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

76.     Plaintiff BOBBIE HULBERT is a natural person residing in the State of Wisconsin. Plaintiff BOBBIE HULBERT was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 21, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff BOBBIE HULBERT began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

77.    Plaintiff PATRICIA JACKSON is a natural person residing in the State of Oklahoma. Plaintiff PATRICIA JACKSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 7, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PATRICIA JACKSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

78.    Plaintiff BRENDA JOHNSON is a natural person residing in the State of Texas. Plaintiff BRENDA JOHNSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 18, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff BRENDA JOHNSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

79.    Plaintiff RHONDA JOHNSON is a natural person residing in the State of Michigan. Plaintiff RHONDA JOHNSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 28, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff RHONDA JOHNSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

80.    Plaintiff MARY JOHNSON is a natural person residing in the State of Tennessee. Plaintiff MARY JOHNSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 21, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARY JOHNSON began to experience severe

1
2
3

complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

81.    Plaintiff NORMA KIESER is a natural person residing in the State of South Dakota. Plaintiff NORMA KIESER was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 13, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff NORMA KIESER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

82.    Plaintiff LEQUITA LANDERS is a natural person residing in the State of New Mexico. Plaintiff LEQUITA LANDERS was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 17, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LEQUITA LANDERS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

83.    Plaintiff JOSEPHINE LEBEAU is a natural person residing in the State of Florida. Plaintiff JOSEPHINE LEBEAU was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 2, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOSEPHINE LEBEAU began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

84.    Plaintiff CAROLE LITTLE is a natural person residing in the State of Oklahoma. Plaintiff CAROLE LITTLE was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 9, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

AMS Monarc Sling was implanted Plaintiff CAROLE LITTLE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

85.    Plaintiff CAROL LOSTUMBO is a natural person residing in the State of New York. Plaintiff CAROL LOSTUMBO was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 2, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CAROL LOSTUMBO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

86.    Plaintiff JUDITH LUNA is a natural person residing in the State of Washington. Plaintiff JUDITH LUNA was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 22, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JUDITH LUNA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

87.    Plaintiff JOHANNA LYONS is a natural person residing in the State of California. Plaintiff JOHANNA LYONS was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 14, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOHANNA LYONS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

88.    Plaintiff JOAN MAHNKEN is a natural person residing in the State of Michigan. Plaintiff JOAN MAHNKEN was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 2, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted

by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOAN MAHNKEN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

89.    Plaintiff MARGIE MARTINEZ is a natural person residing in the State of New Mexico. Plaintiff MARGIE MARTINEZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 11, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARGIE MARTINEZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

90.    Plaintiff MARTHA IRENE MARTINEZ is a natural person residing in the State of Florida. Plaintiff MARTHA IRENE MARTINEZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 1, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARTHA IRENE MARTINEZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

91.    Plaintiff KARREN MAXWELL is a natural person residing in the State of Oklahoma. Plaintiff KARREN MAXWELL was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 30, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KARREN MAXWELL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

92.    Plaintiff PATRICIA MAXWELL-JACKSON is a natural person residing in the State of Georgia. Plaintiff PATRICIA MAXWELL-JACKSON was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 7, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PATRICIA MAXWELL-JACKSON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

93.    Plaintiff TAMMY MCCOLLUM is a natural person residing in the State of Oklahoma. Plaintiff TAMMY MCCOLLUM was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 17, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff TAMMY MCCOLLUM began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

94.    Plaintiff TONI MCGEE is a natural person residing in the State of Arizona. Plaintiff TONI MCGEE was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 2, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff TONI MCGEE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

95.    Plaintiff SANDRA KAY MELTON is a natural person residing in the State of Ohio. Plaintiff SANDRA KAY MELTON was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 15, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SANDRA KAY MELTON began to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

96.   Plaintiff THERESA MENDEZ is a natural person residing in the State of Arizona. Plaintiff THERESA MENDEZ was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 6, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff THERESA MENDEZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

97.   Plaintiff DARLA MEYER is a natural person residing in the State of Wisconsin. Plaintiff DARLA MEYER was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 16, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DARLA MEYER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

98.   Plaintiff BETH MILLER is a natural person residing in the State of New York. Plaintiff BETH MILLER was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 6, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff BETH MILLER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

99.   Plaintiff TABITHA MIRANDA is a natural person residing in the State of Florida. Plaintiff TABITHA MIRANDA was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 4, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

AMS Monarc Sling was implanted Plaintiff TABITHA MIRANDA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

100.    Plaintiff CHRISTINA MORENO-CONNER is a natural person residing in the State of Texas. Plaintiff CHRISTINA MORENO-CONNER was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 15, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CHRISTINA MORENO-CONNER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

101.    Plaintiff SUSIE MORGAN is a natural person residing in the State of Arkansas. Plaintiff SUSIE MORGAN was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 26, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SUSIE MORGAN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

102.    Plaintiff SANDRA MOULTON is a natural person residing in the State of Louisiana. Plaintiff SANDRA MOULTON was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 11, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SANDRA MOULTON began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

103.    Plaintiff MILLIE MUNOZ is a natural person residing in the State of Massachusetts. Plaintiff MILLIE MUNOZ was implanted with an AMS Monarc Subfascial Hammock Sling on or

about February 23, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MILLIE MUNOZ began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

104.    Plaintiff LETICIA MURGUIA is a natural person residing in the State of California. Plaintiff LETICIA MURGUIA was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 1, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LETICIA MURGUIA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

105.    Plaintiff PAMELA MURRAY is a natural person residing in the State of Georgia. Plaintiff PAMELA MURRAY was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 30, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff PAMELA MURRAY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

106.    Plaintiff CELESTINE NOUIS is a natural person residing in the State of Texas. Plaintiff CELESTINE NOUIS was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 23, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CELESTINE NOUIS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

107. Plaintiff SUSAN OCHS is a natural person residing in the State of New York. Plaintiff SUSAN OCHS was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 6, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SUSAN OCHS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

108. Plaintiff JULIE OTT is a natural person residing in the State of Ohio. Plaintiff JULIE OTT was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 9, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JULIE OTT began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

109. Plaintiff CLAIRE PADO is a natural person residing in the State of New York. Plaintiff CLAIRE PADO was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 13, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CLAIRE PADO began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

110. Plaintiff ALICIA PASKEL is a natural person residing in the State of Michigan. Plaintiff ALICIA PASKEL was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 7, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ALICIA PASKEL began to experience severe

complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

111.    Plaintiff GWEN PATE is a natural person residing in the State of North Carolina. Plaintiff GWEN PATE was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 31, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff GWEN PATE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

112.    Plaintiff JILL PELTZIE is a natural person residing in the State of Nevada. Plaintiff JILL PELTZIE was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 15, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JILL PELTZIE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

113.    Plaintiff ROSMARY PENCE is a natural person residing in the State of Texas. Plaintiff ROSMARY PENCE was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 23, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ROSMARY PENCE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

114.    Plaintiff MICHELLE PERTEET is a natural person residing in the State of Texas. Plaintiff MICHELLE PERTEET was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 12, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

CIVIL COMPLAINT FOR DAMAGES
32

AMS Monarc Sling was implanted Plaintiff MICHELLE PERTEET began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

115.    Plaintiff SHIRLEY PRICE is a natural person residing in the State of Utah. Plaintiff SHIRLEY PRICE was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 21, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHIRLEY PRICE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

116.    Plaintiff JOANNE PUTNAM is a natural person residing in the State of Connecticut. Plaintiff JOANNE PUTNAM was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 7, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOANNE PUTNAM began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

117.    Plaintiff KIM REAGLE is a natural person residing in the State of Michigan. Plaintiff KIM REAGLE was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 3, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KIM REAGLE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

118.    Plaintiff JANET RECLA is a natural person residing in the State of Idaho. Plaintiff JANET RECLA was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 9, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant

American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JANET RECLA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

119.    Plaintiff JOYCE ROLLER is a natural person residing in the State of Illinois. Plaintiff JOYCE ROLLER was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 8, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOYCE ROLLER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

120.    Plaintiff ANGEL RUSSELL is a natural person residing in the State of Washington. Plaintiff ANGEL RUSSELL was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 23, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff ANGEL RUSSELL began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

121.    Plaintiff EVA SARTAIN is a natural person residing in the State of Alabama. Plaintiff EVA SARTAIN was implanted with an AMS Monarc Subfascial Hammock Sling on or about December 7, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff EVA SARTAIN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

122.    Plaintiff HEATHER SCHOENBERGER is a natural person residing in the State of Arizona. Plaintiff HEATHER SCHOENBERGER was implanted with an AMS Monarc Subfascial

Hammock Sling on or about July 21, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff HEATHER SCHOENBERGER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

123.    Plaintiff LEILA SCHROEER is a natural person residing in the State of Missouri. Plaintiff LEILA SCHROEER was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 27, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LEILA SCHROEER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

124.    Plaintiff STEPHANIE SCOTT is a natural person residing in the State of Arizona. Plaintiff STEPHANIE SCOTT was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 11, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff STEPHANIE SCOTT began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

125.    Plaintiff CYNTHIA WEST SELLERS is a natural person residing in the State of North Carolina. Plaintiff CYNTHIA WEST SELLERS was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 21, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CYNTHIA WEST SELLERS began to experience severe complications related to the Monarc implant, including but not

limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

126.    Plaintiff JOANNE SELOGY is a natural person residing in the State of Florida. Plaintiff JOANNE SELOGY was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 13, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOANNE SELOGY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

127.    Plaintiff MARIA SILVA is a natural person residing in the State of Texas. Plaintiff MARIA SILVA was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 16, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARIA SILVA began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

128.    Plaintiff MARTHA SPEED is a natural person residing in the State of Washington. Plaintiff MARTHA SPEED was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 14, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MARTHA SPEED began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

129.    Plaintiff LINDA STEELE is a natural person residing in the State of Kentucky. Plaintiff LINDA STEELE was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 27, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

AMS Monarc Sling was implanted Plaintiff LINDA STEELE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

130.    Plaintiff CECIL ALLISON STEPHENS is a natural person residing in the State of Texas. Plaintiff CECIL ALLISON STEPHENS was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 13, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CECIL ALLISON STEPHENS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

131.    Plaintiff KELLY STEVENS is a natural person residing in the State of California. Plaintiff KELLY STEVENS was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 2, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KELLY STEVENS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

132.    Plaintiff DAWN STONE is a natural person residing in the State of California. Plaintiff DAWN STONE was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 24, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DAWN STONE began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

133.    Plaintiff JENNIFER THOMAS is a natural person residing in the State of Texas. Plaintiff JENNIFER THOMAS was implanted with an AMS Monarc Subfascial Hammock Sling on

1  or about July 29, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by

2  Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

3  AMS Monarc Sling was implanted Plaintiff JENNIFER THOMAS began to experience severe

4  complications related to the Monarc implant, including but not limited to extreme pain, discomfort,

5  urinary problems, dyspareunia and other gynecological and urological problems.

6      134.    Plaintiff HELEN THOMAS is a natural person residing in the State of California.

7  Plaintiff HELEN THOMAS was implanted with an AMS Monarc Subfascial Hammock Sling on or

8  about September 23, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted

9  by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

10  AMS Monarc Sling was implanted Plaintiff HELEN THOMAS began to experience severe

11  complications related to the Monarc implant, including but not limited to extreme pain, discomfort,

12  urinary problems, dyspareunia and other gynecological and urological problems.

13      135.    Plaintiff RANDIE TINGEY is a natural person residing in the State of Utah. Plaintiff

14  RANDIE TINGEY was implanted with an AMS Monarc Subfascial Hammock Sling on or about

15  August 11, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by

16  Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

17  AMS Monarc Sling was implanted Plaintiff RANDIE TINGEY began to experience severe

18  complications related to the Monarc implant, including but not limited to extreme pain, discomfort,

19  urinary problems, dyspareunia and other gynecological and urological problems.

20      136.    Plaintiff DIANA TROLL is a natural person residing in the State of New Hampshire.

21  Plaintiff DIANA TROLL was implanted with an AMS Monarc Subfascial Hammock Sling on or

22  about May 21, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by

23  Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the

24  AMS Monarc Sling was implanted Plaintiff DIANA TROLL began to experience severe

25  complications related to the Monarc implant, including but not limited to extreme pain, discomfort,

26  urinary problems, dyspareunia and other gynecological and urological problems.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

137.    Plaintiff DORILE TROSCLAIR is a natural person residing in the State of Louisiana. Plaintiff DORILE TROSCLAIR was implanted with an AMS Monarc Subfascial Hammock Sling on or about August 27, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DORILE TROSCLAIR began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

138.    Plaintiff JEAN TRYKOWSKI is a natural person residing in the State of New York. Plaintiff JEAN TRYKOWSKI was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 14, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JEAN TRYKOWSKI began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

139.    Plaintiff CHARLOTTE TUCKER is a natural person residing in the State of West Virginia. Plaintiff CHARLOTTE TUCKER was implanted with an AMS Monarc Subfascial Hammock Sling on or about September 29, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CHARLOTTE TUCKER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

140.    Plaintiff CHERYL WALTON is a natural person residing in the State of Michigan. Plaintiff CHERYL WALTON was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 9, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CHERYL WALTON began to experience severe

complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

141.    Plaintiff CATHERINE WARD is a natural person residing in the State of Idaho. Plaintiff CATHERINE WARD was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 26, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff CATHERINE WARD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

142.    Plaintiff BRENDA WARREN is a natural person residing in the State of Oklahoma. Plaintiff BRENDA WARREN was implanted with an AMS Monarc Subfascial Hammock Sling on or about November 16, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff BRENDA WARREN began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

143.    Plaintiff NANCY WHEELER is a natural person residing in the State of Indiana. Plaintiff NANCY WHEELER was implanted with an AMS Monarc Subfascial Hammock Sling on or about March 25, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff NANCY WHEELER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

144.    Plaintiff ALYSIA WIDENER is a natural person residing in the State of North Carolina. Plaintiff ALYSIA WIDENER was implanted with an AMS Monarc Subfascial Hammock Sling on or about February 19, 2010.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of

them. After the AMS Monarc Sling was implanted Plaintiff ALYSIA WIDENER began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

145.    Plaintiff LINDA WILEY is a natural person residing in the State of Arkansas. Plaintiff LINDA WILEY was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 22, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LINDA WILEY began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

146.    Plaintiff MAXINE WILGUS is a natural person residing in the State of Oregon. Plaintiff MAXINE WILGUS was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 5, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff MAXINE WILGUS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

147.    Plaintiff JOYCE WILLIAMS is a natural person residing in the State of Virginia. Plaintiff JOYCE WILLIAMS was implanted with an AMS Monarc Subfascial Hammock Sling on or about May 14, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JOYCE WILLIAMS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

148.    Plaintiff DEBRA WILLIS is a natural person residing in the State of Virginia. Plaintiff DEBRA WILLIS was implanted with an AMS Monarc Subfascial Hammock Sling on or about April 21, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant

American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff DEBRA WILLIS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

149.    Plaintiff KIMBERLY WITHROW is a natural person residing in the State of Missouri. Plaintiff KIMBERLY WITHROW was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 25, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KIMBERLY WITHROW began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

150.    Plaintiff JUDITH WOODS is a natural person residing in the State of Nevada. Plaintiff JUDITH WOODS was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 23, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JUDITH WOODS began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

151.    Plaintiff FRANCES WOULLARD is a natural person residing in the State of New York. Plaintiff FRANCES WOULLARD was implanted with an AMS Monarc Subfascial Hammock Sling on or about January 12, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff FRANCES WOULLARD began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

152.    Plaintiff JACQUELINE-SUE WRIGHT is a natural person residing in the State of New Jersey. Plaintiff JACQUELINE-SUE WRIGHT was implanted with an AMS Monarc Subfascial

Hammock Sling on or about September 2, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff JACQUELINE-SUE WRIGHT began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

153.    Plaintiff SHERRY WYSONG is a natural person residing in the State of Colorado. Plaintiff SHERRY WYSONG was implanted with an AMS Monarc Subfascial Hammock Sling on or about July 26, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff SHERRY WYSONG began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

154.    Plaintiff KAREN YOUNG is a natural person residing in the State of Illinois. Plaintiff KAREN YOUNG was implanted with an AMS Monarc Subfascial Hammock Sling on or about October 11, 2010. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff KAREN YOUNG began to experience severe complications related to the Monarc implant, including but not limited to extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological problems.

155.    Plaintiff LYNNETTE YOUNG is a natural person residing in the State of Pennsylvania. Plaintiff LYNNETTE YOUNG was implanted with an AMS Monarc Subfascial Hammock Sling on or about June 16, 2009. The Monarc Sling was manufactured, marketed, advertised and promoted by Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the AMS Monarc Sling was implanted Plaintiff LYNNETTE YOUNG began to experience severe complications related to the Monarc implant, including but not limited to

1
2    extreme pain, discomfort, urinary problems, dyspareunia and other gynecological and urological
problems.

3
-- 156.    Plaintiff JULIE ZINVELI is a natural person residing in the State of Kentucky. Plaintiff
4    JULIE ZINVELI was implanted with an AMS Monarc Subfascial Hammock Sling on or about
5    August 4, 2009.  The Monarc Sling was manufactured, marketed, advertised and promoted by
6    Defendant American Medical Systems, Inc. and DOES 1 through 100, and each of them. After the
7    AMS Monarc Sling was implanted Plaintiff JULIE ZINVELI began to experience severe
8    complications related to the Monarc implant, including but not limited to extreme pain, discomfort,
9    urinary problems, dyspareunia and other gynecological and urological problems.

10
157.    Plaintiffs collectively seek to be tried jointly on the grounds that their claims involve
11    common questions of law and fact.  Plaintiffs further assert their sameness in so far as they were all
12    implanted with a Monarc Sling between the years of 2009 through 2010.

13
158.    As used herein "Implant Plaintiffs" shall mean to refer to the plaintiffs identified herein
14    as someone who was implanted with an American Medical Systems, Inc. transvaginal mesh device.

15
**DEFENDANTS**
16
159.    Defendant American Medical Systems, Inc. ("AMS") is a Delaware corporation,
17    registered to do business in the State of California, with an agent for service of process at George Kane,
18    16809 Bellflower Blvd, Suite 109, Bellflower, CA 90706.

19
- -160. - AMS, Inc. converted to American Medical Systems, LLC, a Delaware limited liability
20    company, on December 17, 2014, and on September 29, 2015 the name "American Medical Systems,
21    LLC" was changed to Astora Women's Health LLC, a Delaware limited liability company. American
22    Medical Systems, LLC may be served by its registered agent Corporation Trust Company, at 711
23    Centerville Road, Suite 400, Wilmington, Delaware 19808.

24
161.    Astora Women's Health LLC is a wholly owned subsidiary of Astora Women's Health
25    Holdings, LLC, a Delaware limited liability company. Astora Women's Health Holdings, LLC was
26    formerly known as Astora Women's Health, Inc., which in turn was formerly known as American
27    Medical Systems Holdings, Inc.  Astora Women's Health LLC may be served by its registered agent
28

CIVIL COMPLAINT FOR DAMAGES
44

Corporation Trust Company, at 1209 N. Orange Street, Wilmington, Delaware 19801.

162.    Astora Women's Health Holdings, LLC is a wholly owned subsidiary of Astora Holdings, LLC, which is a wholly owned subsidiary of Endo Pharmaceuticals Inc., a Delaware corporation.    Asotra    Women's Health Holdings, LLC may be served by its registered agent Corporation Trust Company, at 1209 N. Orange Street, Wilmington, Delaware 19801.

163.    Endo Pharmaceuticals Inc. is a wholly owned subsidiary of Endo Health Solutions Inc., a Delaware corporation.    Endo Pharmaceuticals Inc., may be served by its registered agent Corporation Trust Company, at 1209 N. Orange Street, Wilmington, Delaware 19801.

164.    Endo Health Solutions Inc ay be served by its registered agent Corporation Trust Company, at 1209 N. Orange Street, Wilmington, Delaware 19801.

165.    BOSTON    SCIENTIFIC    CORPORATION    (d/b/a    Mansfield    Scientific,    Inc.    & Microvastive, Inc), is a Delaware Corporation and may be served by its registered agent, Corporation Service Company, at 2711 Centerville Road, Wilmington, DE 19808.

166.    At all times alleged herein, AMS included and includes any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

167.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants named herein as DOES 1 through 100 are unknown to plaintiffs at this time, who therefore sue said defendants by such fictitious names.  When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this Complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each defendant designated as a DOE is responsible, negligently, intentionally, strictly liable or in some other actionable manner, for the events and happenings as alleged herein and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants and each of them were authorized to do and are regularly doing business in the State of California.

168.   When referring collectively to all Defendants in this action, Plaintiffs will use the term "Defendants".

## FACTUAL ALLEGATIONS

169.   At all relevant times, Defendants were in the business of developing, supplying, designing, manufacturing, labeling, packaging, distributing, marketing, supplying, advertising, licensing, selling and otherwise engaging in all activities that are part and parcel of the sale and distribution of Pelvic Mesh Products.   Defendants' Pelvic Mesh Products were purposed to remediate pelvic organ prolapse and/or stress urinary incontinence by implantation of polypropylene mesh inside the pelvic region of a woman's body.

170.   The Pelvic Mesh Products contain a monofilament polypropylene mesh intended for the treatment of pelvic organ prolapse and/or stress urinary incontinence.   Despite claims that this material is inert, the scientific evidence shows that this material is biologically incompatible with human tissue and promotes an immune response in a large subset of the population receiving Defendants' Products containing this material.   This immune response promotes degradation of the pelvic tissue and can contribute to the formation of severe adverse reactions to the mesh.

171.   Defendants marketed and sold their Pelvic Mesh Products to the medical community and to patients as safe, effective and reliable medical devices which are implanted via safe, effective and minimally invasive surgical techniques for the treatment of pelvic organ prolapse and stress urinary incontinence, and as safer and more effective when compared to other products and procedures.

172.   Defendants have marketed and sold their Products to the medical community and patients through carefully planned, multifaceted marketing campaigns and strategies.   These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, and private offices, and often include the provision of valuable consideration and benefits to health care providers. Defendants also utilized documents, brochures, websites and telephone information lines, offering exaggerated and misleading information as to the safety and utility of their Products.

173.   Defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care providers, and patients, into believing their Products are safe and effective, leading to the prescription for, and implantation of, their Products in the Implant Plaintiffs and numerous other women.

174.   At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, minimized, and misrepresented the risks, dangers, defects, and disadvantages of Defendants' Products and advertised, promoted, marketed, licensed, sold and/or distributed these Products as safe medical devices, when, in fact, Defendants knew that these Products were not safe for their intended purposes and that the Defendants' Products would cause, and did cause, serious medical problems, and in some patients, catastrophic and permanent injuries.

175.   Contrary to Defendants' representations and marketing to the medical community and to patients, Defendants' Products have high failure, injury, and complication rates, the products fail to perform as intended or expected, their use requires frequent and often debilitating re-operations, and they have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Implant Plaintiffs.   The defects stem from any or all of the following:

    a.   the use of polypropylene material in the Mesh itself and the immune reaction that results, causing adverse reactions and injuries;

    b.   the design of the Pelvic Mesh Devices to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

    c.   biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury;

    d.   the use and design of anchors in Pelvic Mesh Products which, when placed correctly, are likely to pass through and injure major nerve routes in the pelvic region;

e.  degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury;

f.  the welding of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike; and

g.  the design of trocars, as devices to insert the Pelvic Mesh Products into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries.

176.  Defendants have consistently underreported and withheld information about their Products' propensity to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Products through various means and media, actively and intentionally misleading the medical community, patients, and the public at large.

177.  Despite the chronic underreporting of the adverse events associated with the Defendants' Pelvic Mesh Products and the underreporting of events associated with similarly designed competitor products, enough complaints were recorded for the FDA to issue a public health notification regarding the danger of these devices.

178.  On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three-year period relating to pelvic mesh products. Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the FDA MAUDE database indicates that the Defendants are one of the manufacturers of the products that are the subject of the notification.

179.  On July 13, 2011, the FDA issued a Safety Communication: "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious

concern." (Emphasis added.) The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were "not rare." These serious complications include, but are not limited to: neuromuscular problems, vaginal scarring/shrinkage and emotion problems. Many of the serious complications required medical and surgical treatment and hospitalization. The FDA concluded that it was not clear that transvaginal repair of Pelvic Organ Prolapse with mesh or repair of SUI with mesh kits was more effective than traditional non mesh repair of pelvic organ prolapse. The FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded that based thereon, that transvaginal pelvic organ prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair." In the July 13, 2011 Safety Communication, the FDA concluded that a "mesh procedure may put the patient at risk for requiring additional surgery or for the development of new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible." The information contained in the FDA's Public Health Notification of October 2008 and the FDA Safety Communication of July 13, 2011, was known or knowable to defendants and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use or labeling.

180.    Defendants failed to perform or rely on proper and adequate testing and research in order to determine and evaluate the risks and benefits of its Pelvic Mesh Products.

181.    Defendants failed to design and establish a safe, effective procedure for removal of their Products in the event of a failure, injury, or complication associated with the devices.

182.    Feasible and suitable alternatives for the treatment of pelvic organ prolapse and stress urinary incontinence, as compared to Defendants' Products, have existed at all times relevant hereto.

183.    The Pelvic Mesh Products were at all times utilized and implanted in a manner foreseeable to the Defendants, as Defendants generated the instructions for use, created the procedures for implanting the devices, and trained the implanting physicians.

184.    Defendants have provided incomplete, insufficient, and misleading training and information regarding their Products to physicians to increase the number of physicians utilizing these Products, and thus increasing sales of the Products, which has also lead to the dissemination of inadequate and misleading information to patients, including the Implant Plaintiffs.

185.    The Pelvic Mesh Products implanted into the Implant Plaintiffs were in the same or substantially similar condition as they were when they left the possession of Defendants, and in the condition directed by and expected by the Defendants.

186.    The Implant Plaintiffs and their physicians foreseeably used and implanted the Pelvic Mesh Products, and did not misuse or alter the Products in an unforeseeable manner.

187.    The injuries, conditions and complications suffered by women who have been implanted with Defendants' Pelvic Mesh Products included but are not limited to: mesh erosion; mesh contraction; infection; fistula; inflammation; scare tissue; organ perforation; dyspareunia (pain during sexual intercourse); blood loss; neuropathic and other acute and chronic nerve damage and pain; pudendal nerve damage; pelvic floor damage; chronic pelvic pain; urinary and fecal incontinence; prolapse of organs; and in many cases women have been forced to undergo intensive medical treatment, including, but not limited to operations to locate and remove the mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvic, spine, and the vaginal, and operations to remove portions of the female genitalia.

188.    The Medical and scientific literature studying the effects of polypropylene pelvic mesh, like Defendants' Pelvic Mesh, have examined each of these injuries, conditions, and complications and determined that they are in fact causally related to the mesh itself and do not often implicate errors related to the implantation of the devices.

189.    Defendants misrepresented to the medical and healthcare community, Plaintiffs, and the public that the Pelvic Mesh Products had been tested and were found to be safe and effective for the purposes of treating stress urinary incontinence and/or prolapse.

190.    These representations were made by Defendants with the intent of inducing the medical community, Plaintiffs, and the public, to recommend, prescribe, dispense, and purchase the Products for use as a means of treatment for stress urinary incontinence and/or pelvic organ prolapse, all of which evinced an indifference to the health, safety and welfare of the Plaintiffs.

191.    Defendants failed to undertake their duties to properly know the qualities of their products and in representations to Plaintiffs and/or to Plaintiffs' healthcare providers, concealed and intentionally omitted the following material information:

a.    That the Pelvic Mesh Products were not as safe as other products and procedures available to treat incontinence and/or prolapse;

b.    That the risk of adverse events with the Pelvic Mesh Products was higher than with other products and procedure available to treat incontinence and/or prolapse;

c.    That the risk of adverse of adverse events with Pelvic Mesh Products was not adequately tested and were known by Defendants;

d.    That the limited clinical testing revealed that Pelvic Mesh Products had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse

e.    That defendants failed to follow up on adverse results from clinical studies and buried and/or misrepresented those findings;

f.    That Defendants were aware of dangers in the Pelvic Mesh Products in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

g.    That the Pelvic Mesh Products were dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

h.    That patients needed to be monitored more regularly than usual while using the Pelvic Mesh Products and that in the event the products needed to be removed that the

CIVIL COMPLAINT FOR DAMAGES
51

procedures to remove them had a very high failure rate and/or needed to be performed repeatedly; Thus

    i.   that the Pelvic Mesh Products were manufactured negligently;

    ii.  that the Pelvic Mesh Products were manufactured defectively; and

    iii.  that the Pelvic Mesh Products were designed negligently and designed defectively.

192.    Defendants were under a duty to disclose to Plaintiffs and their physicians, the defective nature of the Pelvic Mesh Products, including, but not limited to, the heighted risks of erosion, failure and permanent injury.

193.    Defendants had sole access to material facts concerning the defective nature of the Products and their propensity to cause serious and dangerous side effects and hence, cause dangerous injuries and damage to persons who used the Pelvic Mesh Products.

194.    Defendants' concealment and omissions of material fact concerning the safety of the Pelvic Mesh Products were made to cause Plaintiffs' physicians and healthcare providers to purchase, prescribe, and/or dispense the Products; and/or to mislead Plaintiffs into reliance and cause Plaintiffs to use the Pelvic Mesh Products.

195.    At the time these misrepresentations were made by Defendant, and at the time Plaintiffs used the Pelvic mesh Products, Plaintiffs were unaware of the falsehood of these representations, and reasonably believed them to be true.

196.    Defendants knew and had reason to know that the Pelvic Mesh Products could and would cause severe and grievous personal injury to the users of the Pelvic Mesh Products, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, or otherwise downplayed warnings.

197.    As a result of Defendants' research and testing or lack thereof, Defendants distributed false information, including but not limited to assuring Plaintiffs, the public, and Plaintiffs' healthcare providers and physicians, that the Pelvic Mesh Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or

procedures available and on the market. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiffs, and the public at large.

198.    Defendants had a duty when disseminating information to the public to disseminate truthful information; and a parallel duty not to deceive the public, Plaintiffs, Plaintiffs' healthcare providers, and the FDA.

199.    The information distributed to the public, the medical community, the FDA, and Plaintiffs by Defendants included, but was not limited to, reports, press releases, advertising campaigns, television commercials, print advertisements, billboards and other commercial medical containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Pelvic Mesh Products.

200.    Defendants intentionally made material misrepresentations to the medical community and public, including Plaintiffs, regarding the safety of the Pelvic Mesh Products, specifically that the Pelvic Mesh Products did not have dangerous and/or serious adverse health safety concerns, and that the Pelvic Mesh Products were as safe as other means of treating vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

201.    Defendants intentionally failed to inform the public, including Plaintiffs, of the high failure rate including erosion, the difficulty of removing the mesh and the risk of permanent injury.

202.    Defendants chose to over-promote the safety, efficacy and benefits of the Pelvic mesh Products instead.

203.    Defendants' intent and purpose in making these misrepresentations was to deceive the public, the medical community, and Plaintiffs; to gain the confidence of the public, the medical community, and Plaintiffs; to falsely assure them of the quality and fitness for use of the Pelvic Mesh Products; and to induce Plaintiffs, the public and the medical community to request, recommend, prescribe, dispense, purchase and continue to use the Pelvic Mesh Products.

204.    Defendants made claims and representations in its documents submitted to the FDA and its reports to the public and to healthcare professionals and in advertisements that the Products did not

present serious health risks.

205.    These misrepresentations, and others made by Defendants, were false when made and/or were made with the pretense of actual knowledge when such knowledge did not actually exist, and were made recklessly and without regard to the true facts.

206.    These representations, and others made by Defendants, were made with the intention of deceiving Plaintiffs, Plaintiffs' healthcare professionals and other members of the healthcare community, and were made in order to induce Plaintiffs, and their respective healthcare professionals, to rely on misrepresentations, and caused Plaintiffs to purchase, rely, use, and request the Pelvic Mesh Products and their healthcare professionals to dispense, recommend, or prescribe the Pelvic Mesh Products.

207.    Defendants recklessly and/or intentionally falsely represented the dangerous and serious health and safety concerns inherent in the use of the Pelvic Mesh Products to the public at large, for the purpose of influencing the sales of products known to be dangerous and defective, and/or not as safe as other alternatives. Defendants utilized direct-to-consumer advertising to market, promote, and advertise the Pelvic Mesh Products.

208.    At the time the representations were made, Plaintiffs and their healthcare providers did not know the truth about the dangers and serious health and/or safety risks inherent in the use of the Pelvic Mesh Products. Plaintiffs did not discover the true facts about the dangers and serious health and/or safety risks, nor did Plaintiffs discover the false representations of Defendants, nor would Plaintiffs with reasonable diligence have discovered the true facts of Defendants' misrepresentations.

209.    Had Plaintiffs known the true facts about the dangers and serious health and/or safety risks of the Pelvic Mesh Products, Plaintiff would not have purchased, used, or relied on Defendants' Pelvic Mesh Products.

210.    At all times relevant to this action, Defendants knew that the Pelvic Mesh Products were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and

dyspareunia. Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage. Removal can require multiple surgical in interventions in the operating thereafter for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

211.   At all relevant times herein, Defendants continued to promote Pelvic Mesh Products as safe and effective even when no clinical trials had been done supporting long or short-term efficacy.

212.   In doing so the Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Pelvic Mesh Products for treatment of vaginal vault prolapse, stress urinary incontinence, pelvic organ prolapse or rectocele.

213.   At all relevant times herein, Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Pelvic Mesh Products system including, but not limited to, extreme and chronic pain, mesh erosion, infection, dyspareunia, infection, sepsis, permanent disfigurement and the need for corrective surgeries.

214.   The Pelvic Mesh Products as designed, manufactured, distributed, sold and/or supplied by Defendants were defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of Defendants knowledge of pack of pelvic health safety.

215.   At all times herein mentioned, the officers and/or directors of the Defendant AMS and DOES 1 through 100, and each of them named herein, participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiffs.

216.   The devices used in Plaintiffs' surgeries were AMS Products, each of which was designed, manufactured by Defendant AMS.

217.   Upon information and belief, the pain that Plaintiffs suffered after the surgeries, and continue to suffer, was caused by negligent design and manufacture of the Pelvic Mesh Devices that were surgically implanted in them.

218.    Plaintiffs' injuries were caused by the negligent design and manufacturing of the Pelvic Mesh Products, which is supported by the fact that the FDA has received thousands of reports of women who were injured or killed after being implanted with devices similar to that used in Plaintiffs' procedures.

219.    At all times that the Pelvic Mesh Products were implanted in Plaintiffs, the Pelvic Mesh Products were being used for the purpose that Defendants marketed the products.

220.    After, and as a result of the implantation of the Pelvic Mesh Products, Plaintiffs suffered serious bodily injuries including, but not limited to, extreme pain, erosion, infection, dyspareunia, urinary problems, the need for additional surgery and other injuries.  These injuries would not have occurred but for the defective nature of the products implanted and/or Defendants' wrongful conduct.

221.    As a result of having the Pelvic Mesh Products implanted, Plaintiffs have experienced significant mental and physical pain and suffering, have required additional medical treatment, and have sustained permanent injury.

222.    As a result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were injured in their health, strength, and activity, sustaining injury to their persons, all of which injuries have caused Plaintiffs severe mental and physical pain and suffering.  Plaintiffs are informed and believe, and allege thereon, that such injuries will result in some permanent disability to their bodies.  As a result of such injuries, Plaintiffs have suffered general damages in an amount within the jurisdiction of the state court.

223.    As a further result of the aforesaid conduct and defective product manufactured, sold, distributed, advertised, and promoted by Defendants, Plaintiffs were required to and employed healthcare providers and incurred medical and incidental expenses; further, Plaintiffs are informed and believe, and allege thereon, that Plaintiffs may be required to incur additional medical, hospital and incidental expenses thereto, all according to proof.

## FIRST CAUSE OF ACTION

### [Strict Liability – Failure to Warn]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – FAILURE TO WARN ALLEGE AS FOLLOWS:

224.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

225.    Defendants manufactured, sold and/or distributed the Pelvic Mesh Products to Plaintiffs to be used for the treatment of stress urinary incontinence and/or pelvic organ prolapse.

226.    At all times mentioned herein, the Pelvic Mesh Products were and are, dangerous and presented a substantial danger to patients who were implanted with the Pelvic Mesh Devices, and these risks and dangers were known or knowable at the time of distribution and implantation in Plaintiff. Ordinary consumers would not have recognized the potential risks and dangers the Pelvic Mesh Products posed to pelvic reconstruction patients because its uses was specifically promoted to improve the health of such patients.  The Pelvic Mesh Products were used in a way reasonable foreseeable to Defendants by Plaintiffs. Defendants failed to provide warnings of such risks and dangers to Plaintiffs as described herein.

227.    As a result of the implantation of the Pelvic Mesh Products Plaintiffs suffered debilitating injuries including extreme pain, erosion, dyspareunia, urinary problems, recurrent incontinence, and for some Plaintiffs the need for additional surgery.

228.    In doing the acts herein described, the Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future.  Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

229.    At all times herein mentioned, the Pelvic Mesh Products were being used as intended by Defendants and in a manner foreseeable to Defendants.

230.    As a result of the defective condition of the Pelvic Mesh Products, namely the lack of sufficient warnings, Plaintiffs have suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## <u>SECOND CAUSE OF ACTION</u>

**[Strict Liability – Manufacturing Defect]**

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT ALLEGE AS FOLLOWS:

231.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

232.    At all times herein mentioned, Defendants' Pelvic Mesh Products were prescribed and used as intended by Defendants and in a manner reasonably foreseeable to Defendants.

233.    The Pelvic Mesh Products were defective at the time of their manufacture, development, production, testing, inspection, endorsement, prescription, sale and distribution, and at the time they left the possession of the Defendants, in that, and not by way of limitation, the products differed from the Defendants' intended result and intended design and specifications, and from other ostensibly identical units of the same product line.

234.    As a proximate and legal result of the defective condition of the Pelvic Mesh Products, Plaintiffs were caused to suffer and will continue to suffer the herein described injuries and damages.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## THIRD CAUSE OF ACTION

**[Strict Products Liability – Design Defect]**

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY – DESIGN DEFECT ALLEGE AS FOLLOWS:

235.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

236.    The Pelvic Mesh Products were designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected of failed to inspect, labeled, advertised, promoted, marketed, supplied, licensed, distributed, wholesaled, and sold by Defendants.

237.    The Pelvic Mesh Products manufactured, licensed, supplied, and/or placed into the stream of commerce by Defendants were defective and unreasonably dangerous in that

a.   The foreseeable risks exceeded the benefits associated with the Products design or formulation;

b.   They contained inadequate post-marketing warnings or instructions; and

c.   They were more dangerous than would be expected or appreciated by an ordinary consumer.

238.   The Pelvic Mesh Products that were manufactured, supplied, and/or placed into the stream of commerce by Defendants were more dangerous than an ordinary customer would expect, and more dangerous than other Products or procedures available to treat stress urinary incontinence, pelvic organ prolapse and/or rectocele repair.

239.   The design defects in Defendants' Products existed at the time when the Products left Defendants' control.

240.   Defendants knew that the Products were to be purchased and used without inspection for defects.

241.   The Pelvic Mesh Products were and are unsafe for their intended and foreseeable uses by reason of defects in the design so that they would not safely serve its purpose, but would instead expose the users of said Products to incur serious injuries.

242.   Plaintiffs used the Products in a reasonably foreseeable manner.

243.   Defendants designed the Products defectively, causing them to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeably manner.

244.   As a direct and proximate result of the aforementioned defects in the design of the Products, Plaintiffs sustained the injuries and damages set forth herein.

\WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## **FOURTH CAUSE OF ACTION**

### **[Negligence]**

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

245.   Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this

CIVIL COMPLAINT FOR DAMAGES

59

Complaint as if fully set forth herein and further allege as follows:

246.    At all times herein mentioned, Defendants, and each of them, were and are engaged in the business of researching, manufacturing, licensing, fabricating, designing, labeling, distributing, using, supplying, selling, marketing, warranting, packaging and advertising the Pelvic Mesh Products.

247.    Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care in pursuit of the activities mentioned above, and Defendants, and each of them, breached said duty of due care.

248.    At all times relevant hereto, Defendants, and each of them, owed to Plaintiffs and the public a duty to act reasonably and to exercise ordinary care with respect to the safe, legal, and proper manufacture, license, design, formulation, distribution, production, processing, assembly, testing, inspection, research, marketing, labeling, packaging, preparation for use, issuance of warnings with respect to promotion, advertising, sale, and safety monitoring of the Products, and to adequately test and warn of the risk and dangers of the Products, both before and after sale.

249.    Additionally, Defendants, and each of them, owed to Plaintiffs and the public a duty to provide accurate, reliable, and completely truthful information regarding the safety and any dangerous propensities of the Products manufactured, used, distributed, and/or supplied by then and to provide accurate, reliable, and completely truthful information regarding the failure of the Products to perform as intended or as an ordinary consumer would expect.

250.    At all times relevant hereto, Defendants, and each of them, singularly and jointly, breached the aforementioned duties in that they negligently and carelessly manufactured, fabricated, designed, licensed, produced, compounded, assembled, inspected or failed to inspect, tested or failed to test, warned or failed to warn of the health hazards, labeled, distributed, handled, used, supplied, sold, marketed, warranted, packaged, promoted and advertised the Pelvic Mesh Products in that said Products caused, directly and proximately, the injuries of Plaintiff through failure of the Products to perform as intended or as an ordinary consumer would expect.

251.    The acts of Defendants, and each of them, as herein alleged, constitute violations of the duty of ordinary care and skill owed by Defendants, and each of them, to Plaintiffs.

252.    Plaintiffs used, handled, or were implanted with Defendants Products referred herein in a manner that was reasonably foreseeable.

253.    As the direct and proximate result of Defendants' breach of their aforementioned duties with respect to the Products, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### [Breach of Implied Warranty]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR BREACH OF IMPLIED WARRENTY ALLEGE AS FOLLOWS:

254.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

255.    Defendants, and each of them, impliedly warranted to the Plaintiffs, their prescribing physicians and healthcare providers, the medical scientific, pharmaceutical and health communities, the FDA, and the public, in general, that the Products were of merchantable quality and safe and fit for the use for which they were intended.

256.    Plaintiffs and their physicians and healthcare providers were, and remain, unskilled in the research, design and manufacture of the Products and reasonably relied on the skill, judgment and implied warranty of Defendants in using the aforementioned Products.

257.    Defendants breached their warranties in that the Products were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, in that the Products had dangerous propensities and known or knowable side effects when put to their intended use and would cause severe injuries to the user, which propensities and side effects were known or knowable but were not warned of by Defendants.

258.    As a result of the aforementioned breach of implied warranties by Defendants and each of them, Plaintiffs suffered injuries and damages as alleged herein.

259.    After Plaintiffs were made aware their injuries were a result of the aforesaid Pelvic Mesh

Products, Defendants had ample and sufficient notice of breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### SIXTH CAUSE OF ACTION

### [Breach of Express Warranty]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY ALLEGE AS FOLLOWS:

260.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

261.    Defendants expressly warranted to Plaintiffs and/or their authorized agents or sales representations, in publications, and other communications intended for medical patients, and the general public, that the defective Pelvic Mesh Products were safe, effective, fit and proper for their intended use.

262.    Plaintiffs and Plaintiffs' physicians reasonably relied upon the skill and judgment of Defendants, and upon said express warranty, in using the aforesaid products.  The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use in which it was intended and caused Plaintiffs to sustain damages and injuries herein alleged.

263.    As soon as the true nature of the products, and the fact that the warranty and representations were false, were ascertained, said Defendants had ample and sufficient notice of the breach of said warranty.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

### [Deceit by Concealment – Cal. Civ. Code §§ 1709, 1710]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR DECEIT BY CONCEALMENT ALLEGE AS FOLLOWS:

264.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this

Complaint as if fully set forth herein and further allege as follows:

265.    At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and their physicians, the true facts concerning the aforesaid Pelvic Mesh Products, that is, that said products were dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiffs and their physicians and the general public prior to the date Pelvic Mesh Products were implanted in Plaintiffs, while concealing material facts.

266.    At all times herein mentioned, Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore, Plaintiffs, with the intent to defraud as herein alleged.

267.    At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the Pelvic Mesh Products for the correction of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele. Defendants' representations were a substantial factor in Plaintiffs utilizing the Pelvic Mesh Products for correction of their medical conditions.

268.    As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as herein set forth.

269.    The herein-described conduct of said Defendants, and each of them, was willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of patients with pelvic medical conditions, such as Plaintiffs.  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth

## EIGHTH CAUSE OF ACTION

### [Negligent Misrepresentation]

CIVIL COMPLAINT FOR DAMAGES
63

Exh 1 - Page 72

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION ALLEGE AS FOLLOWS:

270.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

271.    Defendants from the time that the Pelvic Mesh Products were first tested, studied, researched, first manufactured, marketed and distributed, and up to the present,  made false representations, as previously set forth herein, to the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, including, but not limited to, the misrepresentation that the Pelvic Mesh Products were safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence, and/or rectocele repair.

272.    At all times relevant hereto, Defendants conducted a sales and marketing Campaign to promote the sale of the Pelvic Mesh Products and willfully deceive the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general as to the health risks and consequences of the use of the Pelvic Mesh Products.

273.    Defendants made the foregoing misrepresentations without any reasonable ground for believing them to be true. These misrepresentations were made directly by Defendants, by sales representatives, detail persons and other authorized agents of said Defendants, and in publications and other written materials directed to the Plaintiffs, their prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general with the intention of inducing reliance and the purchase and implantation of the Pelvic Mesh Products.

274.    The foregoing representations by Defendants were in fact false in that the Pelvic Products are not, and at all relevant times alleged herein, were not safe, fit, and effective for the treatment of pelvic organ prolapse, stress urinary incontinence and/or rectocele, the use of the Pelvic Mesh Products is hazardous to health, and the Pelvic Mesh Products have a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered as described herein. The foregoing

misrepresentations by Defendants were made with the intention of inducing reliance and inducing the purchase and implantation of Pelvic Mesh Products.

275.    In reliance on the misrepresentations be Defendants, Plaintiffs and their prescribing physicians and healthcare providers were induced to purchase use the Pelvic Mesh Products. If they had known of the true facts and the facts concealed by Defendants, they would not have used the Pelvic Mesh Products, and their reliance upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

276.    As a result of the concealment of the facts set forth above, Plaintiffs sustained injuries as set forth herein.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

//

//

//

//

//

### NINTH CAUSE OF ACTION

### [Fraud by Concealment]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR FRAUD BY CONCEALMENT ALLEGE AS FOLLOWS:

277.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein and further allege as follows:

278.    At all times mentioned herein, Defendants had the duty and obligations to disclose to Plaintiff and to her physicians, the true facts concerning the Pelvic Mesh Products, that is, that said products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. Defendants made the affirmative representations as set forth above to Plaintiffs

and their physicians and the general public prior to the date the Pelvic Mesh Products were implanted in Plaintiffs, while concealing material facts.

279.    At all times herein mentioned, Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiffs and their physicians, and therefore Plaintiffs, with the intent to defraud as herein alleged.

280.    At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set for the above, and had they been aware of said fact, they would not have acted as they did, that is, would not have reasonably relied upon said representations of safety and efficacy and utilized the Pelvic Mesh Products for correction of urinary incontinence, pelvic organ prolapse, vaginal vault prolapse and rectocele.  Defendants' misrepresentations were a substantial fact in Plaintiffs utilizing the Pelvic Mesh Products for correction of their medical conditions.

281.    As a result of the concealment of the facts set for the above, Plaintiffs sustained injuries as set forth herein.

282.    The herein-described conduct of said Defendants, and each of them, was willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of patients with pelvic medical conditions, such as Plaintiffs.  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TENTH CAUSE OF ACTION

### [Violations of Bus. & Prof. Code § 17200]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE §17200 ALLEGE AS FOLLOWS:

283.    Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

284.    California Business & Professions Code§ 17200 provides that unfair competition shall

mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising".

285.    Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released into the stream of commerce the Pelvic Mesh Products in the course of same, directly advertised or marketed the product to the FDA, health care professionals and consumers, including Plaintiffs, or persons responsible for consumer.

286.    The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California Business & Professions Code§ 17200. The acts of untrue and misleading advertising set forth in presiding paragraphs are incorporated by reference and are, by definition, violations of California Business & Professions Code§ 17200. This conduct is set forth fully herein, and includes, but is not limited to:

    a.  Representing that goods or services have characteristics, ingredients, uses, benefits or qualities that they do not have;

    b.  Advertising goods or services with the intent not to sell them as advertised;

    c.  Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have;

    d.  Failing to disclose information concerning goods which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

    e.  Unconscionable actions and courses of action; and

    f.  Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

287.    Defendants uniformly communicated the purported benefits of the Pelvic Mesh Products while failing to disclose the serious and dangerous side-effects related to the Products and of the true state of the Products, the regulatory status, its safety, its efficacy and its true usefulness. Defendants made these representations to physicians, the medical community at large and to patients and

consumers, such as Plaintiffs, in their marketing and advertising.

288.    Defendants' conduct in connection with the Products was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Defendants misleadingly, falsely and/or deceptively misrepresented and omitted numerous material facts regarding the utility, benefits, costs, safety, efficacy and advantages of the Product.

289.    As a direct, proximate and foreseeable result of Defendants' statutory violations, Plaintiffs suffered the injuries and consequential economic and other losses, as described above, when Plaintiffs were implanted with the Pelvic Mesh Products.

290.    These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business & Professions Code § 17200.

291.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

292.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and use of Defendants' Pelvic Mesh Products in California, sold in large part as a result of the acts and omissions described herein.

293.    Said Plaintiffs, pursuant to California Business & Professions Code § 17203, seek an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

### [Violations of Bus. & Prof. Code § 17500]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF THE BUSINESS & PROFESSIONS CODE §17500 ALLEGE AS FOLLOWS:

294.    Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

295.    Plaintiffs bring this cause of action pursuant to California Business & Professions Code § 17500.

296.    California Business & Professions Code§ 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

297.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code§ 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Defendants' Pelvic Mesh Products:

    a.   Representing that the Products are safe, fit, and effective for human use, knowing that said representations were false, and concealing that the Product had a serious propensity to cause injuries to users;

    b.   Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the Products are safer than other alternative products, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

    c.   Purposely downplaying and understating the health hazards and risks associated with the Products.

    d.   Issuing promotional literature deceiving potential users of the Products by relaying positive information, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of the Products.

    e.   Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide implanting physicians with appropriate information and protect patients who use their products, including Plaintiffs, such as failing to engage in proper signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting

CIVIL COMPLAINT FOR DAMAGES
69

proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels and instructions concerning safety issues and safe implanting practices for their products.

298.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code§ 17500.

299.    The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

300.    As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of millions of dollars in ill-gotten gains from the sale and prescription of the Products in California, sold in large part as a result of the acts and omissions described herein.

301.    Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

302.    Said Plaintiffs seek restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## TWELFTH CAUSE OF ACTION

### [Violations of Cal. Civ. Code § 1750]

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-100, AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR VIOLATIONS OF CAL. CIVIL CODE §1750 ALLEGE AS FOLLOWS:

303.    Plaintiffs hereby re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

304.    Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, by the acts and misconduct alleged herein, violated the Consumers Legal Remedies Act, California Civil Code §§ 1750 et. seq. ("CLRA").

305.    Said Plaintiffs hereby seek injunctive relief as appropriate against Defendants, and each of them, for their violations of California Civil Code §§ 1750 et. seq. The CLRA applies to Defendants' actions and conduct described herein because it extends to transactions which are intended to result, or which have resulted, in the sale of goods to consumers.

306.    Implant Plaintiffs and are "consumers" within the meaning of California Civil Code § 176l(d).

307.    Defendants have violated, and continue to violate, the CLRA in representing that goods have characteristics and benefits which they do not have, in violation of California Civil Code § 1770(a)(5).

308.    At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California Civil Code § 1770, by engaging in the following acts and practices with intent to induce members of the public to purchase and use Pelvic Mesh Products:

   a.    Representing that the Products are safe, fit, and effective for human use, knowing that said representations were false, and concealing that the Product had a serious propensity to cause injuries to users;

   b.    Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the Products are safer than other alternative products, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

   c.    Purposely downplaying and understating the health hazards and risks associated with the Product.

   d.    Issuing promotional literature and commercials deceiving potential users of the Products by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the

known adverse and serious health effects and concealing material relevant information regarding the safety and efficacy of the Products.

e. Engaging in a practice undertaking unlawful, unfair or fraudulent acts by refraining from taking any action that would provide prescribing physicians with appropriate information and protect patients who use their products, including Plaintiffs, such as failing to engage in proper signal detection and follow up, review of the literature, regulatory review, updating labels and timely and properly implementing label changes and conducting proper research, tests and studies to ensure the continued safety of their products, and taking appropriate action to disseminate to prescribing physicians and healthcare providers appropriate and permitted product information and labels concerning safety issues and safe prescribing practices for their products.

309.    The foregoing practices constitute false and misleading advertising and representations within the meaning of California Civil Code§ 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein. Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiffs will continue to be harmed by the wrongful actions and conduct of Defendants. Pursuant to California Civil Code § 1780, said Plaintiffs seek an order of this court for injunctive relief calling for Defendants, and each of them, to cease such deceptive business practices in the future.

WHEREFORE, said Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and incidental expenses, according to proof;

3.    For past and future loss of earnings and/or earning capacity, according to proof;

4.    For future medical monitoring costs, according to proof;

5.    For punitive and exemplary damages in an amount to be determined at trial;

6.    For injunctive relief, enjoining Defendants from the acts of unfair competition and untrue and misleading advertising;

7.    For a disgorgement of profits, according to proof.

8.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED:  May 2, 2017                          NAPOLI SHKOLNIK LLP

                                             By:____/s/_____
                                                  Jennifer Liakos
                                                  Attorney for Plaintiffs


## JURY DEMAND

Plaintiffs each demand an individual trial by jury on all issues which may be tried by a jury.


DATED:  May 2, 2017                          NAPOLI SHKOLNIK LLP

                                             By:____/s/_____
                                                  Jennifer Liakos
                                                  Attorney for Plaintiffs